IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| METHOD, LLC, a Washington Limited Liability Company dba METHOD HOMES; and METHOD CONTRACTING, LLC, a Washington Limited Liability Company, | CV 17–25–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| MAKE IT RIGHT FOUNDATION, a Delaware Corporation; MAKE IT RIGHT-MONTANA, LLC, a Delaware Limited Liability Company; MR INNOVATIONS, LLC, a Delaware Limited Liability Company; MAKE IT RIGHT FOUNDATION dba MIR MONTANA; MIR INNOVATIONS, LLC dba MIR MONTANA; SAMUEL WHITT dba MIR MONTANA; JOHN DOES 1-50; and ABC BUSINESSES 1-20, | |
| Defendants. | |

Plaintiffs bring this action alleging that Defendants are liable for damages resulting from breach of contract. Defendants removed the case to federal court from the Montana Fourth Judicial District Court, Missoula County. (Doc. 1.)

-1-

Pending before the Court are Plaintiffs' Motion to Remand (Doc. 11), Defendants' Motion to Arbitrate and Stay Proceedings (Doc. 13), and Plaintiffs' Motion for Sanctions (Doc. 57).

For the reasons stated below, the Court denies the Motion to Remand, grants the Motion to Compel Arbitration, and denies the Motion for Sanctions (Doc. 57).

## FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2013, Defendants partnered with the Sioux and Assiniboine tribes to build sustainable homes on the Fort Peck Indian Reservation. To this end, they hired contractors, including the Plaintiffs, to build homes for tribal members in need of housing. Plaintiffs' claims arise from allegations of unpaid work. Specifically, Plaintiff Method Homes alleges an outstanding balance on two contracts: (1) $7,377.94 under the AIA Agreement; and (2) $37,691.90 under the Modular Home Purchase Agreement ("MHPA"); and Plaintiff Method Contracting claims $138, 276.63 in damages under the Contractor Agreement. The total alleged damages are $183,346.47.

On January 30, 2017, Plaintiffs filed a Complaint in the Montana Fourth Judicial Court claiming breach and waiver of an arbitration clause, breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment. On June 30, 2017, Defendants answered the Complaint, and asserted Counterclaims alleging defective design, defective workmanship, breach of

-2-

warranty, and breach of contract. Defendants also moved to compel arbitration. On March 1, 2017, Defendants removed the case to this Court, invoking jurisdiction under 28 U.S.C. § 1332(a).

Because the parties are familiar with the facts of this case they will only be stated as necessary to understand the Court's Order.

ANALYSIS

I. **Motion to Remand**

Though Plaintiffs' initially opposed Defendants removal on the grounds that the amount in controversy requirement could not be met for Method Homes, Plaintiffs now concede that the Court may exercise supplemental jurisdiction. (Doc. 43 at 2.)

Under 28 U.S.C. § 1332(a), a federal court has jurisdiction when the amount in controversy exceeds $75,000.00 and the parties are diverse. A case brought in state court may be removed to federal court only if the case could have been brought in federal court originally. 28 U.S.C. § 1441(a); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989). Additionally, a federal court may exercise supplemental jurisdiction over any claim so "related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In other words,

> "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction."

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

Neither Plaintiffs nor Defendants contest that the parties are diverse. Method Homes has asserted damages under two contracts, the AIA agreement and the MHPA, totaling $45,069.84, while Method Contracting easily meets the amount in controversy requirement with alleged damages totalling $138,276.63.

Further, the parties agree that the Court may exercise supplemental jurisdiction over Method Homes' claims because they are so interconnected with Method Contracting's claims as to form a single controversy. *Exxon Mobil Corp.*, 545 U.S. at 549. Defendants hired Plaintiffs, two sister companies, to complete work under a single Project, that is, to build sustainable homes on the Fort Peck Reservation. (Doc. 22 at 4.) Both Plaintiffs' companies were under the same management and billed and negotiated with Defendants by way of the same representative. The Contractor Agreement arose out of the MHPA, as additional compensation to expedite the project. (*Id.*) At all times during the negotiations that preceded this case, the parties treated the amount at issue, $183,346.47, as a single debt owed for work under a single project. Given this,

the Court agrees that its exercise of jurisdiction is proper and denies the Motion to Remand.

## II. Motion to Compel Arbitration

Defendants move the Court to compel arbitration and stay proceedings, asserting that the MHPA contains a binding arbitration clause and, despite the back-and-forth nature of the dispute, they have never refused to arbitrate and are willing to do so now. (Doc. 15.) Plaintiffs, on the other hand, assert that Defendants breached the arbitration clause and, alternatively, waived any right to it by first refusing to arbitrate and then engaging in dilatory tactics. (Doc. 44.)

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration" and facilitates private dispute resolution by making arbitration agreements presumptively "valid, irrevocable, and enforceable." *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013)) (quoting 9 U.S.C. § 2). Under the FAA, a party to an arbitration agreement may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3–4. Any ambiguities as to the scope of the arbitration provision must be interpreted in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *see also AT&T Techs. Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986). The

-5-

FAA limits a district court to determining, "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore*, 718 F.3d at 1058 (internal citation and quotation omitted). If a valid arbitration agreement exists, the district court is required to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

As a threshold matter, the Court finds that a valid arbitration clause exists. Paragraph 12 of the MHPA contains a clause binding the parties to attempt to resolve disputes by "meeting in good faith" before submitting to binding arbitration for any dispute left unresolved. (Doc. 3 at 45.) The Court also determines that the arbitration clause governs this dispute. At a minimum, the Plaintiffs' claim for $37,691.90 under the MHPA is covered by the clause. However, given that the parties have both treated the $183,346.47 as a single debt, and the Plaintiffs request that any mandated arbitration be handled as a global resolution (Doc. 44 at 7), the Court determines that Paragraph 12 governs the entire matter. Having found a valid arbitration clause, the only question remaining is whether the Defendants breached or waived the clause.

"[A] party may challenge the validity or applicability of the arbitration provision by raising the same defenses available to a party seeking to avoid the enforcement of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114,

1121 (9th Cir. 2008) (internal quotation marks and citations omitted). Whether a contract has been breached is a question of state law. *Id.* In this context, breach of the arbitration clause requires the Court's determination that (1) Plaintiffs invoked Paragraph 12 and (2) Defendants refused to participate.

Defendants argue that they could not have breached the contract because Plaintiffs did not properly invoke Paragraph 12 according to the terms of the MHPA. (Doc. 15 at 10.) Plaintiffs counter that this is a hyper-technical interpretation, and assert that they substantially complied with the procedure set forth in Paragraph 12. Alternatively, Plaintiffs assert that Defendants breached the "meet and confer" provision by failing to respond to Plaintiffs demands on three separate occasions. (Doc. 44 at 22–24.)

The Court disagrees. Defendants did not have the opportunity to breach because Plaintiffs' failed to invoke Paragraph 12's arbitration clause according to its terms. The arbitration provision specifies a procedure:

12. Disputes

> The parties agree to meet together and, in good faith, attempt to resolve any dispute between them. Any dispute not so resolved shall be submitted to binding arbitration before Judicial Dispute Resolution (JDR) in Missoula, Montana. Where not in conflict with RCW 7.04A, JDR rules shall apply.

(Doc. 3 at 45.)

JDR's Arbitration Rules require the following:

> **Commencement of an Arbitration**: An Arbitration is commenced when the parties agree to arbitrate or either party serves a Notice of Intention to Arbitrate consistent with RCW 7.04A.090 on the other party or parties and on Judicial Dispute Resolution, describing the nature of the controversy and the remedy sought.

(Doc. 15 at 9.)

Plaintiffs did not invoke Paragraph 12 because they never served notice on JDR, nor did they have an agreement with Defendants to begin arbitration. Instead, on January 18, 2017, Plaintiffs sent a letter entitled "Demand for Arbitration," which expressed their intent to seek arbitration, but sought changes to the terms of the agreement. Plaintiffs suggested a Missoula-based arbitrator instead of JDR, a Seattle-based firm provided for in the contract. (Doc. 3 at 73.) Plaintiffs also expressed their willingness to proceed with the Seattle-based arbitrator, if the Defendants preferred. (*Id.*) Plaintiffs provided a short time-frame in which Defendants had to respond and stated that if Defendants did not respond, they would proceed to litigation. (Doc. 3 at 73–74.) Defendants responded, stating their intention was "to meet in good faith to resolve this dispute" and proposed mediation, which Plaintiffs ultimately agreed to. (Doc. 44 at 14.) Thus, arbitration was never initiated according to the procedure provided in Paragraph 12. Plaintiffs and Defendants made other arrangements that are

-8-

more properly construed as attempts to fulfill the first clause of the paragraph, to meet in a good faith attempt to resolve the dispute.

Nor does the Court find that Defendants were derelict in their duty to "meet and confer." In response to Plaintiffs first formal attempt, Defendants' in-house counsel responded that she was waiting to hear back from her client regarding his availability and would be in touch shortly. (Doc. 3 at 62.) After Plaintiffs retained Montana counsel, they again requested a meeting be scheduled within the next month. (Doc. 3 at 67–68.) On the deadline provided by the Plaintiffs, Defendants responded stating that they had still not received the necessary documentation and expressed intent to come to an amicable resolution. (Doc. 3 at 69–70.) Plaintiffs believed that Defendants had this information, but nonetheless provided it again. (Doc. 3 at 71–72.) Shortly thereafter, Plaintiffs sent their "Demand for Arbitration." At no time, in any of the documentation provided to the Court, did Defendants refuse to meet. Instead, any delay that occurred over the four-month period from September 18, 2016, to January 18, 2017, when Plaintiffs ultimately declared their attempts unsuccessful, was due to Defendants' request for more information and additional time to review the information provided to them. Given Defendants' position that the issues was complex and poorly documented, the Court does not construe Defendants' communications as a breach of their obligation to "meet and confer."

Finding no breach, the Court turns to Plaintiffs' next argument that Defendants' dilatory tactics resulted in their waiver of the arbitration clause. "The right to arbitration, like any other contract right, can be waived." *United States v. Park Place Ass'n,* 563 F.3d 907, 921 (9th Cir. 2009) (citation omitted). A party claiming waiver of the right to arbitrate must establish: (1) the waiving party had knowledge of an existing right to compel arbitration; (2) the waiving party acted inconsistently with that existing right; and (3) prejudice will result to the party opposing arbitration as the result. *Id.* This is a heavy burden. *Id.* (internal quotation marks and citation omitted). The Court's determination of the waiver issue "must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.,* 791 F.2d 691, 694 (9th Cir. 1986). Doubts regarding defenses against arbitrability, such as waiver or delay, should be resolved in favor of arbitration. *Id.* (citing *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25 (1986) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")).

To find waiver, Plaintiffs must first demonstrate that the Defendants had knowledge of the right to arbitrate under Paragraph 12 of the MHPA. The Court

-10-

concludes that Plaintiffs have met this burden, as the parties exchanged numerous emails referring to the rights at issue. (*See* Doc. 3 at 62, 64, 67, 73.) Thus, this element is satisfied.

Next, Plaintiffs have the burden to show that Defendants behaved inconsistently with this right. Plaintiffs argue that Defendants did so by repeatedly engaging in delay and stall tactics, citing Plaintiffs' four attempts to invoke Paragraph 12 and five warnings, over a "more than four month period." (Doc. 44 at 6–7.) Plaintiffs cite a Sixth Circuit case in support of their argument which held that a party had waived arbitration after engaging in negotiations for fifteen months while simultaneously denying the existence of an arbitration clause. (Doc. 44 at 29 (citing *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 357 (6th Cir. 2003)).)

This case is easily distinguishable both in conduct and duration. Defendants never denied the existence of the arbitration clause, or declined to arbitrate according to the terms laid out in the MHPA. Nor does the timeline justify waiver. Plaintiffs argue that the waiver occurred as the result of a four-month period in which they vigorously sought to get Defendants at the bargaining table. The Court recognizes that Defendants were not prompt in replying by today's standards. However, Defendants have explained that the delays were due to confusion over the nature of the disputed amounts and Plaintiffs

-11-

"self-described convoluted billing" practices. (Doc. 3 at 57.) Upon receipt of the information, Defendants asked for more patience than the 48 hours initially provided to them by the Plaintiffs. (Doc. 3 at 74.) While Defendants worked to understand the nature of the issue, it's clear that Plaintiffs became impatient and declared their attempts "unsuccessful." (Doc. 3 at 62.) Both parties were actively seeking a remedy. Defendants suggested mediation and participated in a second discussion attempting to define alternate arbitration terms. (Doc. 49 at 3–4.) There is no waiver in merely moving the battle "from one venue to another," which is what was attempted in this case. *Park Place Ass'n*, 563 F.3d at 921.

Lastly, Plaintiffs bear a heavy burden of establishing that proceeding to litigation will prejudice them. *Id.* Plaintiffs argue that they have been prejudiced because the arbitration clause provided that "a resolution was likely to be completed within 100 days" and that they have incurred significant litigation costs through this process. (Doc. 44 at 31.) Plaintiffs contend that if not for Defendants delay tactics, they would have been spared the costs of drafting the Complaint and various litigation documents. *See Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (stating that a plaintiff can demonstrate prejudice when they have "incurred costs that they would not otherwise have incurred" but for the Defendants failure to arbitrate.) However, "[t]o prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing

in federal court contrary to the provisions of an arbitration agreement." *Id.*

Plaintiffs argue that they filed a Complaint because Defendants forced their hand. However, the fact that Plaintiffs' Complaint was filed "at the same time" as the Plaintiffs agreed to mediate with the Defendants belies this argument. (Doc. 44 at 14.) The Complaint and subsequent litigation to stay the case pending mediation cannot be accounted for in the prejudice equation, as these are "self-inflicted wounds." Moreover, Plaintiffs opposed the Motion to Compel Arbitration, and thus generated those litigation costs themselves. Given the FAAs strong preference towards arbitration and Plaintiffs heavy burden to prove waiver, the Court concludes this burden has not been met.

For these reasons, the Court will grant Defendants Motion to Compel Arbitration and Stay Proceedings.

### III. Sanctions

Plaintiffs seek sanctions against the Defendants for "twice failing to engage in ADR in good faith during the course of this litigation." Plaintiffs characterize Defendants conduct as "tantamount to bad faith" and state that Defendants had "improperly lured Plaintiffs into mediation and arbitration without any intention" of engaging in ADR. (Doc. 58 at 12.)

The Court agrees with Plaintiffs that the Court has the power to impose sanctions. The Court's power to impose sanctions to deter improper conduct

arises from: (1) Federal Rule of Civil Procedure 11; (2) this Court's Local Rules, including L.R. 1.1(d) ("A judge may impose sanctions for violation of these rules"), and L.R. 16.5(b)(4)(B) ("[f]ailure to participate in good faith may result in sanctions against the offending party"); and (3) the Court's inherent power. *See Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

However, the Court does not agree that it should impose sanctions in this case. Sanctions are appropriate where an attorney engages in "bad faith or conduct tantamount to bad faith." *Id.* at 993. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." A district court ordering sanctions must make a specific factual finding that supports sanctions. *Id.*

Here, the record is devoid of any evidence of conduct tantamount to bad faith that could support the imposition of sanctions. Accordingly,

IT IS ORDERED that Plaintiffs' Motion to Remand (Doc. 11) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 13) is GRANTED.

IT IS FURTHERED ORDERED that Plaintiffs' Motion for Sanctions Against Defendants (Doc. 59) is DENIED.

IT IS FURTHER ORDERED that this matter is STAYED pending

-14-

arbitration. The parties shall file a joint status report by April 2, 2018, describing the progress of the arbitration proceedings.

DATED this 1st day of February, 2018.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court